Bonnie Barbara NICHOLS *v.* Grace CLEVELAND,
Guardian of Mary Alice NICHOLS

82-136                                    637 S.W.2d 609

Supreme Court of Arkansas
Opinion delivered July 19, 1982

*Ross & Ross,* by: *Mark Ross,* for appellant.

No brief for appellee.

JOHN I. PURTLE, Justice. In August 1980 Grace Cleveland, acting as guardian of Mary Alice Nichols, filed suit No. 80-684 in the Garland County, Arkansas, Chancery Court. She sought to set aside a deed from Mary Alice Nichols to Bonnie Rowland, a/k/a Barbara Nichols, a/k/a B. B. Nichols. Both Grace Cleveland and Barbara Nichols are daughters of Mary Alice Nichols. Appellee alleged the deed was a forgery and that Mary Alice Nichols was incompetent on July 24, 1976, when the deed was signed. Upon request of the appellant, Chancellor Chesnutt recused

himself from the case. Chancellor Gayle Ford was assigned by Chief Justice Fogleman to try Case No. P79-345 in the Probate Court of Garland County, Arkansas, and was authorized to handle all ancillary proceedings in connection with that case. The probate case dealt with the issue of vacating the guardianship of Mary Alice Nichols.

Chancery Case No. 80-684 was decided by Chancellor Gayle Ford sitting on exchange for Chancellor Chesnutt, by a decree dated June 10, 1981. In the final order, from which this appeal is taken, he determined that the incompetent did not intend to divest title from herself and invest title in the defendant during her lifetime. He also held that the deed and accompanying bill of sale should fail as an attempted testamentary disposition of the real property involved in this case. The deed of July 24, 1976, which purported to convey the property from Mary Alice Nichols to the appellant was cancelled. There were no other findings of fact or conclusions of law accompanying or included in the decree. There was no order at any time made which allowed the pleadings to be amended to conform to the proof.

On appeal the appellant alleges (1) there was insufficient evidence to show the deed to be forged as alleged in the complaint and the court made no such findings; (2) there was insufficient evidence to show Mary Alice Nichols was incompetent on the date the deed was executed; (3) the court erred in refusing to grant a new trial because the decree was based upon grounds not raised by the pleadings; (4) the court erred in refusing to grant a continuance until the probate case seeking to vacate the guardianship was heard; and (5) the court erred in entering an order denying a new trial after the court had recused from the case.

The facts and pleadings are very complicated due in large part to the appellant's pro se actions which included one 20 page typewritten pleading. There were many other handwritten exhibits and pleadings included. Also, the case had undergone the recusal of two chancellors. Additionally, the attorney for the appellant was allowed to withdraw after the trial.

A deed was either forged or executed by Mary Alice Nichols in which the property in question was conveyed to the appellant on July 24, 1976. A bill of sale of the same date on the same land was also allegedly executed by Mary Alice Nichols. In fact, Mary Alice Nichols had executed the deed to the same property to her son, Royce, on April 6, 1976. The deed to Royce was never recorded and the record indicates he died in 1979. However, the appellant recorded her deed and bill of sale on June 16, 1980.

In the meantime, Grace Cleveland filed a probate action to have herself appointed guardian of her mother, Mary Alice Nichols, and was so appointed on April 21, 1980. On May 5, 1980, appellant filed a petition, in probate Case No. P79-345, in which she sought to set aside the order appointing her sister, Grace Cleveland, as guardian of their mother. The appellant became unhappy with Chancellor Chesnutt and petitioned for his recusal. He obliged and on April 5, 1980, Chief Justice Fogleman appointed Chancellor Gayle Ford to hear the probate case and all ancillary matters arising out of said proceedings.

Appellant and her attorney strenuously objected before Chancellor Ford to the hearing of the chancery case on January 26, 1981, insisting that the probate case must necessarily be decided first. They argued that if Mary Alice Nichols was declared not to be incompetent at that time then Grace Cleveland would have no standing to bring the chancery court proceeding in which she sought to declare the deed and bill of sale to the appellant invalid.

There was an order prepared by Chancellor Chesnutt disqualifying himself from Case No. 80-684 on January 21, 1981, and requesting Chancellor Ford to hear it for him. Chancellor Ford accepted the assignment on January 26, 1981, which was the date the chancery case was commenced. There was no order from the Arkansas Judicial Department or the Chief Justice appointing Chancellor Ford to hear the chancery case. Arguments for a continuance were heard and overruled before the trial commenced. The trial court did acknowledge pendency of the probate case and stated it was at least going to hear the chancery matter on that date and if

it could be shown that the probate case could be decided first it would go ahead and do that but the same testimony could not be used for both trials. The court stated there was no reason not to go ahead and take testimony in the chancery matter and it would consider the request to hear the other case. The court agreed to reserve the question of the guardian's standing. This issue was never ruled upon by the court nor has the probate case been tried at the present time.

The pleadings were never amended to conform to the proof. In fact, Grace Cleveland testified that her mother was competent on April 6, 1976, when she executed a deed to Royce Nichols. The notary public who acknowledged the signature on the deed to Royce testified that Mary Alice Nichols was all right at the time she executed the deed. The notary public who witnessed the signature on the deed to the appellant was deceased but his daughter positively testified that the signature of her father was real. Grace Cleveland testified that her mother was incompetent at the time she signed the deed to appellant. However, she either accompanied or sent her mother to the office of attorney Julian Glover on March 20, 1980, where Mary Alice Nichols revoked a previous power of attorney in favor of the appellant. The revocation was prepared by attorney Glover and filed of record with the Garland County Circuit Clerk. On August 5, 1979, Mary Alice Nichols executed a notice to quit against the appellant and caused the sheriff to serve it on October 22, 1979. Witness Harold Lavender testified that Mary Alice Nichols seemed rational enough at the time she signed the deed to Royce. Witness Robert H. Scott testified he was acquainted with all of the parties and that in 1976 Mary Alice Nichols seemed normal with no incapacity. He thought she understood her actions.

There is evidence that the appellant was in possession of the house and did a considerable amount of repairs. Various papers indicate that she assumed some indebtedness against the property and paid her mother additional sums.

Larry Bryan, Vice President and Trust Officer of the First National Bank, testified that the signature on the deed to the appellant did not appear to be that of Mary Alice

Nichols. He did not claim to be an expert, and the court stated, "There is no doubt he is not an examiner of questioned documents."

Doctor Driver Rowland testified that Mary Alice Nichols was last seen by him on December 20, 1976. He had talked to her over the telephone but had not seen her since that time. He was treating her for heart trouble at that time. He stated that her ailments probably contributed to her mental ability or deficiency and that he felt that she was senile and unable to care for her own needs. He stated, "I did not see her and this was just noted in passing." He further stated that he had recommended in 1972 that a guardian be appointed because of her mental and physical ailments. He admitted that people could improve from conditions similar to hers but he would not expect her symptoms to entirely disappear. He stated, "I certainly wouldn't say it was not possible that there were times in 1976 when she was competent to make decisions for herself." No other witnesses testified in this case.

The complaint in chancery alleged the deed was a forgery and that the grantor was incompetent. Apparently, these are alternate pleadings. The count of forgery was actionable in chancery but the matter of competency was a probate subject. If the probate case had been heard first, it is possible the appellee would not have had standing to file suit in her mother's behalf. In any event, the guardianship order was not entered until April 21, 1980, which was almost four years after the alleged execution of the deed here in question. The probate order is not a part of the record and therefore there is no evidence, other than that previously stated, that Mary Alice Nichols was incompetent at the time the deed in question was executed. In fact, it does not seem there was any evidence that on the date the deed was executed Mary Alice Nichols was, indeed, incompetent.

In view of the fact that the trial court made no findings relating to the alleged forgery or as to the competency of the grantor it does not seem the case was fully tried. The matter of standing is still pending so far as the record indicates. The trial court has recused itself from any further proceedings in

the chancery case. Therefore, it appears the only manner in which this case can properly be disposed is to remand it for a hearing on the probate matter and a retrial on the chancery case.

Reversed and remanded.

HICKMAN, J., would affirm under Rule 9 (d), Supreme Court Rules.